UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LISA BUCHANAN | CIVIL ACTION NO. 1:17-cv-01314 |
| VERSUS | JUDGE DRELL |
| WAL-MART LOUISIANA, LLC, ET AL. | MAGISTRATE JUDGE PEREZ-MONTES |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants, Wal-Mart Louisiana, LLC and Wal-Mart Stores, Inc. ("Walmart"), respectfully submit this Memorandum in Support of their Motion for Summary Judgment. As will be established herein, plaintiff cannot meet her burden of proof under La. R.S. 9:2800.6. Therefore, summary judgment is appropriate.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This claim arises out of an alleged incident that occurred on June 20, 2016, at the Wal-Mart Store located in Jena, Louisiana. On this date, plaintiff, Lisa Buchanan arrived at the Store intending to purchase potting soil and dog food. (Ex. 1, p. 18, lines 9-11). When plaintiff exited the Store and was returning to her vehicle, she heard someone either call her name or a car backfire, and she turned her head to the right. (Ex. 1, p. 29, lines 3-13). As she was looking to the right, plaintiff alleges that she stepped on an area of uneven concrete, causing her to fall. (Ex. 1, p. 24, lines 9-16). The accident occurred near a yellow bollard in the front row of parking spaces that is to the far-right side of the parking lot when facing the Store. (Id.; Ex. 1, p. 25, lines 11-14; Ex. 1(A); Ex. 2, Affidavit of Brad Herrington, ¶ 4). Plaintiff's head was still turned to the right when she fell. (Ex. 1, p. 29, lines 15-17). Plaintiff did not notice the raised area of concrete prior to her

1

fall. (Ex. 1, p. 26, lines 4-6; p. 28, lines 23-24).

Asset Protection Associate Brad Herrington measured the difference in elevation in the concrete expansion joint in the area where plaintiff fell. (Ex. 2, ¶ 9). According to his measurements, the approximate variance in height is one (1) inch. (Ex. 2, ¶ 10; See photographs attached as Ex. 2(A) *in globo*). The location of the accident is not near the main entrance to the Store and is not a high traffic area. (Ex. 2, ¶ 6). At the time of Ms. Buchanan's accident, Mr. Herrington was not aware of the uneven concrete expansion joint and is not aware of any other Walmart associate that had knowledge of this condition at the time of Ms. Buchanan's incident. (Ex. 2, ¶ 7). Mr. Herrington does not know how long the condition existed prior to the incident and is not aware of any Walmart associate that has knowledge of this. (Ex. 2, ¶ 8).

Kelli Barker was an Assistant Store Manager at the Jena Wal-Mart and was working on the day of plaintiff's accident. Following plaintiff's accident, Ms. Barker went to look at the area where plaintiff fell. (Ex. 3, p. 34, lines 15-22). She did not notice what may have caused plaintiff to fall. (Ex. 3, p. 35, lines 6-9). Since the time of plaintiff's accident, she used the water faucet near the area where plaintiff fell and did not notice the difference in elevation. (Ex. 3, p. 26, lines 6-12). She does not know how long the uneven area where plaintiff fell was uneven. (Ex. 3, p. 45, lines 10-14).

II. **LAW AND ARGUMENT**

    A. **SUMMARY JUDGMENT STANDARD**

As this Court is well aware, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could

2

not lead a rational trier of fact to find for the nonmoving party. . . ." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

In deciding a motion for summary judgment, "the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3rd Cir. 2006) (citing Liberty Lobby, 477 U.S. at 248). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

In opposing a motion for summary judgment, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). However, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L Ed.2d 265 (1986) (emphasis added).

## B. BURDEN SHIFTS TO PLAINTIFF UPON SHOWING OF AN ABSENCE OF PROOF

Where, as here, the burden of proof at trial is on the party opposing the motion, the party moving for summary judgment satisfies its burden on the motion by identifying the elements of the opposing party's claims for which there is an absence of proof. Stahl v. Novartis Pharm. Corp.,

283 F.3d 254, 263 (5th Cir. 2002). The party opposing the motion may not rest on mere allegations or denials of pleadings but must set forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmovant must "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence supported their claim." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994). The evidence must be admissible to avoid summary judgment. See Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992).

Thus, to withstand a properly supported motion for summary judgment, the nonmoving party, who bears the burden of proof at trial, must come forward with evidence to support the essential elements of its claim. Celotex, 477 U.S. at 321-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Id. at 323.

### C. LOUISIANA REVISED STATUTE 9:2800.6

La. R.S. 9:2800.6 is the controlling statute for trip and fall cases at a merchant retail store, and other statutes do not apply to falls due to a condition in or on the merchant's premises. Caldwell v. Wal-Mart Stores Inc, No. CV 17-00904, 2018 WL 1386635, at *2 (W.D. La. Mar. 19, 2018). This statute encompasses accidents due to a defect in the parking lot of a merchant retail store. Id. La. Rev. Stat. 9:2800.6 reads in its entirety as follows:

**La. R.S. 9:2800.6 Burden of proof in claims against merchants.**

- A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

- B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the

claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions

(1) "Constructive Notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise as a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

Therefore, in a case such as this one, in addition to the other elements, the plaintiff must prove:

1. The condition presented an unreasonable risk of harm and that risk was reasonably foreseeable;

2. The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and

3. The merchant failed to exercise reasonable care.

Allen v Wal-Mart Stores, 37,352 (La. App. 2d Cir. 6/25/03), 850 So.2d 895, 897. The plaintiff's failure to prove any of these factors is fatal to the plaintiff's claim. Id.

E. ARGUMENT

Plaintiff must establish not only the existence of a condition that presented an unreasonable risk of harm that caused her to trip, but also that Wal-Mart either created the condition, or had actual or constructive notice that it existed. Plaintiff cannot carry this burden. Moreover, Courts do not hesitate to grant Motions for Summary Judgment when plaintiffs fail to meet this heavy burden. See Leonard v. Sam's W., Inc., No. CIV.A. 11-846, 2013 WL 121761, at *3 (M.D. La. Jan. 9, 2013) (granting summary judgment where plaintiff tripped on a depression in the merchant's parking lot); Caldwell v. Wal-Mart Stores Inc, No. CV 17-00904, 2018 WL 1386635, at *1 (W.D. La. Mar. 19, 2018) (granting summary judgment where plaintiff tripped in a pothole in the merchant's parking lot); Dowdy v. City of Monroe, 78 So.3d 791, 798–799 (La.Ct.App.2011) ("A review of the jurisprudence reveals that the appellate courts have resolved on motions for summary judgment the issue of whether a condition presented an unreasonable risk of danger.") Leonard v. Parish of Jefferson, 902 So.2d 502 (La.Ct.App.2005) (affirming trial court's grant of summary judgment where plaintiff slipped on a sidewalk height differential of over one inch).

1. **THERE IS NO EVIDENCE THAT THE CONDITION PRESENTED AN UNREASONABLE RISK OF HARM**

In order for a defect to present an "unreasonable risk of harm" to persons on the premises, it must be of such a nature as to constitute a "dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances." Lee v. Magnolia Garden Apartments, 96-1328 (La. App. 1 Cir. 5/9/97), 694 So. 2d 1142, 1146, writ denied, 97-1544 (La. 9/26/97), 701 So. 2d 990. Hence, not every minor imperfection or irregularity in a thing will result in liability.

6

In determining whether a paving defect presents an unreasonable risk of harm, the Louisiana Supreme Court has considered the size of the defect, its location, and the accident history of the defect. Leonard v. Sam's W., Inc., No. CIV.A. 11-846, 2013 WL 121761, at *3 (M.D. La. Jan. 9, 2013) (citing Reed v. Wal-Mart Stores, Inc., 97-1174 (La. 3/4/98), 708 So. 2d 362; Boyle v. Bd. of Sup'rs, Louisiana State Univ., 96-1158 (La. 1/14/97), 685 So. 2d 1080). The Court also considered the gravity and risk of harm against the cost and feasibility of repair, social utility, and individual and societal rights and obligations. Id.

First, considering the size of the defect, the evidence reveals that there is a vertical separation of approximately one inch in the concrete expansion joint upon which Ms. Buchanan tripped. (Ex. 2, ¶ 10). "[T]he Louisiana Supreme Court has held that similar depressions and variances in walkways were not unreasonably dangerous." Leonard v. Sam's W., Inc., No. CIV.A. 11-846, 2013 WL 121761, at *3 (M.D. La. Jan. 9, 2013). The court in Leonard surveyed the Louisiana Supreme Court jurisprudence as follows: Reed v. Wal-Mart Stores, Inc., 97-1174 (La. 3/4/98), 708 So. 2d 362 (holding that a one-half inch depression was not unreasonably dangerous); Boyle v. Bd. of Sup'rs, Louisiana State Univ., 96-1158 (La. 1/14/97), 685 So. 2d 1080 (depression of one inch to two inches did not present an unreasonable risk); and White v. City of Alexandria, 216 La. 308, 314, 43 So. 2d 618, 620 (1949) (holding that a variance in a sidewalk of one-half inch to two inches did not present an unreasonable risk of harm).

Second, the location of the depression and the absence of accident history also support a finding that the condition was not unreasonably dangerous. In the instant matter, there were no reported accidents at the location of Ms. Buchanan's incident or anywhere in the parking lot prior to her incident. (Ex. 2, ¶ 4). Furthermore, the complained of condition was not in a high traffic area. (Ex. 2, ¶ 6). "These factors suggest that the likelihood and magnitude of potential harm

were low." Leonard v. Sam's W., Inc., No. CIV.A. 11-846, 2013 WL 121761, at *3 (M.D. La. Jan. 9, 2013).

Third, the cost to eliminate all such minor defects is staggering. Reed, 708 So. 2d at 366; See also Boyle, 658 So. 2d at 1083; Leonard, 2013 WL 121761, at *3. The Louisiana Supreme Court in both Reed and Boyle noted the proper cost to consider is not the cost of repairing a single crack in a walkway, but the cost of repairing all similar defects. In Boyle, 658 So. 2d at 1083, the Court stated:

> The cost of repair to be considered includes not just the minor costs of repairing the single defect in question, but the cost of repairing all similar or worse defects existing in the twenty-two or more miles of sidewalk. Otherwise university officials would be placed in the position of having to predict where the next accident will take place regardless of the relative seriousness of the defect.

In Reed, 708 So. 2d at 366, the Court stated:

> The cost of repairing the defect is our final consideration. Contrary to the plaintiff's contention that "the defect could have easily been remedied for a minimal amount," the cost to eliminate all such minor defects is staggering. Plaintiff's argument incorrectly assumes that the defendant need only have smoothed the joint at issue. Such a contention simplistically overlooks the reality of the situation. A defendant would have to be able to accurately foresee which crack an individual would trip over. Even an elimination of all such elevation deviations in this entire parking lot would fall short of repairing the defect. To avoid liability, this defendant would have to either eliminate all such "defects" in all of its parking lots and sidewalks or cease doing business. Beyond that, parties having garde of the countless concrete parking lots, driveways, sidewalks, and streets throughout the state would likewise have to smooth such surfaces eliminating all elevation deviations of more than 1/4 inch to avoid potential liability. Furthermore, such an enormous expense would not rest with the parties owning the paved surfaces, but rather the cost would be shifted either to the public through taxing in the case of government-owned surfaces or, in the case of privately owned concrete surfaces, to consumers via higher prices in retail or increased fees for contract parking. Beyond the cost of the initial smoothing, maintaining such surfaces free from defects is likely impossible, and is certainly cost-prohibitive.

As in Boyle, Reed and Leonard, the appropriate inquiry should be the cost to repair all such

minor defects in all sidewalks and parking areas surrounding the Store. Due to the continuing settlement which occurs in Louisiana, the cost of repairing all minor defects in every walkway and parking area would be staggering.

Finally, the Louisiana Supreme Court has stated that "the utility of paved parking lots is clearly apparent as unpaved parking lots would present far more hazards." Reed v. Wal-Mart Stores, Inc., 97-1174 (La. 3/4/98), 708 So. 2d 362, 366; See also Boyle v. Bd. of Sup'rs, Louisiana State Univ., 96-1158 (La. 1/14/97), 685 So. 2d 1080, 1083; Leonard v. Sam's W., Inc., No. CIV.A. 11-846, 2013 WL 121761, at *4 (M.D. La. Jan. 9, 2013).

Accordingly, plaintiff cannot meet her burden of proof to show that the uneven expansion joint presented an unreasonable risk of harm.

### 2. THERE IS NO EVIDENCE THAT WAL-MART CREATED THE ALLEGED HAZARDOUS CONDITION

Plaintiff offers no evidence that Wal-Mart or any associate of Wal-Mart created the alleged condition in this matter that caused plaintiff to fall. Moreover, Kelli Barker testified in her deposition that as of the time of her deposition, there had never been any work done in the area where plaintiff fell. (Ex. 3, pg. 24, lines 11-14, and pg. 26, lines 13-17).

### 3. THERE IS NO EVIDENCE THAT WAL-MART HAD ACTUAL OR CONSTRUCTIVE NOTICE OF THE ALLEGED HAZARDOUS CONDITION

The record is devoid of evidence that any Wal-Mart employee knew of the uneven expansion joint at the time of the incident. Asset Protection Associate Brad Herrington was not aware of the uneven concrete expansion joint at the time of Ms. Buchanan's incident. (Ex. 2, ¶ 7). He is also not aware of any other Walmart associate that had knowledge of this condition at the time of Ms. Buchanan's incident. Id. Mr. Herrington does not know how long the condition existed prior to the incident and is not aware of any Walmart associate that has knowledge of this.

9

(Ex. 2, ¶ 8). Kelly Barker, an Assistant Manager at the time of Ms. Buchanan's incident, also testified that she was unaware of anyone that was aware of the condition if they had not watched the video of this incident. (Ex. 3, p. 23, lines 20-23; pg. 45, lines 10-14). Indeed, Ms. Buchanan herself testified that she had never noticed the uneven pavement. (Ex. 1, p. 28, lines 23-24).

In Waddles v. Brookshire Grocery Co., 50,150 (La. App. 2 Cir. 9/30/15), 181 So.3d 772, the Court affirmed the trial court's finding that the defendant merchant did not have notice of a crack in the parking lot that caused plaintiff's fall:

> Mr. Hightower's testimony demonstrates that Defendant did not have actual notice of the condition because he testified that no one other than Plaintiff ever reported an accident in the area where Plaintiff fell, even though this is an area used by numerous customers and employees each day. The evidence presented at trial does not prove that Defendant had constructive notice of the condition. Plaintiff did not prove that the condition in the parking lot crosswalk existed for such a period of time that it would have been discovered if Defendant had exercised reasonable care. Although employees use the crosswalk daily, no evidence was introduced that any employee knew or should have known of the condition.

Waddles v. Brookshire Grocery Co., 50,150 (La. App. 2 Cir. 9/30/15), 181 So. 3d 772, 778.

The same is true in the instant matter. There is no evidence that Walmart or any of its associates had actual knowledge of the uneven expansion joint. Furthermore, there is no evidence of constructive notice. Specifically, there is no evidence that the condition existed for such a period of time that it would have been discovered in the exercise of reasonable care.

### III. CONCLUSION

In order to prevail on her claim, plaintiff must satisfy each element of La. R.S. 9:2800.6. Plaintiff cannot satisfy this burden of proof. Plaintiff has failed to produce any evidence that the alleged defect presented an unreasonable risk of harm. Furthermore, plaintiff cannot produce any evidence or any witness who can testify that Wal-Mart created the condition which existed, or that it had actual or constructive notice of its existence.

Respectfully submitted,

**CHADWICK & ODOM, LLC**

_____

R. O'Neal Chadwick, Jr. (#19517)
nchadwick@chadwicklawpartners.com
Gregory B. Odom, II (#33470)
godom@chadwicklawpartners.com
Sara B. Dantzler (#29821)
sdantzler@chadwicklawpartners.com
P.O. Box 12114
Alexandria, LA 71315
Telephone: (318) 445-9899
Facsimile: (318) 445-9470
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing was filed with the United States District Court for the Western District of Louisiana by electronic case filing/case management and that a copy of the same was served on all counsel of record by electronic notification.

Alexandria, Louisiana this 30th day of April, 2019.

CHADWICK & ODOM, LLC

_____
Gregory B. Odom, II (#33470)