UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LISA BUCHANAN | CIVIL ACTION NO. 1:17-1314 |
| VERSUS | |
| | JUDGE DEE D. DRELL |
| WAL-MART LOUISIANA, LLC, *ET AL.* | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendants, Wal-Mart Louisiana, LLC and Wal-Mart Stores, Inc. (collectively referred to as "Wal-Mart") in the above captioned personal injury suit. For the reasons explained herein, the motion for summary judgment will be GRANTED in full, dismissing all claims asserted by plaintiff, Lisa Buchanan ("Buchanan").

### Background

On June 20, 2016, Buchanan fell in the parking lot of the Wal-Mart store in Jena, Louisiana. According to Buchanan, she stepped on an uneven expansion joint between two portions of the parking surface which caused her left ankle to twist and her to fall. She sustained an injury to her right knee for which she underwent a knee replacement.

Physical evidence in this case consists of a Wal-Mart surveillance video of the parking lot and photographs taken by Wal-Mart's Asset Protection Associate, Brad Harrington. (Docs 33-2 and 42-4, p.64 and 42-5-5, p.4-8).

The surveillance video shows Buchanan's white SUV pulling into a parking space located between a lawn and garden display set up in the parking lot and a yellow striped area adjacent to

the crosswalk to the lawn and garden entrance of the store. A smaller square portion of the striped area is protected by stanchion posts painted bright yellow. Buchanan's door is about even with this stanchioned area.

Buchanan exits her vehicle, obtains a shopping cart, and peruses the lawn and garden display. She then traverses the parking lot, through the crosswalk and goes out of view. Minutes later, Buchanan is seen walking to her car via the crosswalk. As she exits the crosswalk and enters the yellow striped area, she looks to her right, takes a few steps, her left foot steps on the uneven area between the concrete slabs, and she falls.

The pictures, which were taken after the date of the fall, depict the yellow striped area from the vantage point of the parking lot. As with the surveillance video, the uneven span of concrete is obvious to the naked eye. Close-up photos of the expansion joint and concrete slabs at issue show a vertical variation in height of approximately one inch. No other defects or hazards are visible.

## Summary Judgment Standard

Fed. R. Civ. P. 56 provides that any party may move for summary judgment as to one or more claims or defenses. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## Analysis

The law applicable to merchant premises liability matters, such as the one before the court, is found in Louisiana Revised Statute 9:2800.6. Section A of the statute explains that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his

aisles, passageways, and floors in a reasonably safe condition. The duty includes a reasonable effort to keep the premises free of any hazardous conditions which might reasonably give rise to damage." La. R.S 9:2800.6(A). Section B of the same statute explains that a plaintiff who brings a case against the merchant for injury, death or loss sustained because of a fall due to a condition existing in or on the merchant's premises must prove: (1) the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and (3) the merchant failed to exercise reasonable care." La.R.S. 9:2800.6(B). Failure to prove any one of these factors is fatal to her case. White v. Wal-Mart Stores, Inc., 699 So.2d 1081 (La. 1997).

Neither the case law, plaintiff's expert witness, nor argument or evidence presented by Buchanan creates a genuine dispute of material fact regarding the uneven pavement presenting an unreasonable risk of harm. Buchanan attempts to first create such an issue by establishing that the vertical difference in height between the two slabs of concrete was unreasonably high. She relies upon her own deposition testimony where she estimated the difference in height to be 1.5 to 2 inches. This statement is directly controverted by Wal-Mart's physical evidence which show a variation of 1 inch. Additionally, Buchanan's expert seems to accept the measurement as accurate and a factual basis for his report. (Doc. 47-3).

As Wal-Mart pointed out, Louisiana courts have consistently held that similar variations in heights on parking lots and sidewalks (i.e. flat walking surfaces) do not pose an unreasonable risk of harm. See Reed v. Wal–Mart Stores, Inc., 708 So.2d 362 (La.1998) (height variation in parking lot of 1.5 to 2 inches did not present an unreasonable risk of harm) ; Boyle v. Bd. of Supervisors, La. State Univ., 685 So.2d 1080 (La.1997) (depression of up to one inch in a sidewalk did not pose

3

unreasonable risk of harm); White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (La.1949) (variance on a sidewalk of 1.5 to 2 inches did not present unforeseeable risk of harm); Leonard v. Parish of Jefferson, 902 So.2d 502 (La.Ct.App. 2005) (sidewalk height differential of over one inch did not present unreasonable risk of harm).

Buchanan responds by citing three cases, Sistler v. Libby Mutual Ins. Co., 558 So.2d 1106 (La.1990), Cline v. Cheema, 85 So,2d 260 (La. 2012), and Buchignani v. Lafayette Ins. Co., 938 So.2d 1198 (La. 2006), she contends show similar differences in elevation do constitute an unreasonable risk of harm. We do not find Sistler v. Libby Mutual Ins. Co., 558 So.2d 1106 (La.1990) and Buchignani v. Lafayette Ins. Co., 938 So.2d 1198 (La. 2006) applicable as the uneven surfaces in those cases were located around steps, not on smooth walking surfaces, and while the state appellate court in Cline v. Cheema, 85 So,2d 260 (La. 2012) did find an elevation change between 1.25 to 2 inches to present an unreasonable risk of harm, we cite Chambers v. Village of Moreauville, 85 So.3d 593 (La. 2012) in which the Louisiana Supreme Court specifically states "Louisiana jurisprudence has consistently held that a one and one half inch deviation does not generally present an unreasonable risk of harm." Id. at 598-99.

Buchanan also offers the affidavit and expert report of Ladd P. Ehlinger to create an issue of material fact regarding the unreasonable risk of harm. Mr. Ehlinger states:

> Since the preparation of this report, I have reviewed the affidavit of Brad Herrington submitted by Wal-Mart in support of its motion for summary judgment.
>
> Mr. Herrington's statement that there was a vertical separation of approximately one inch at the location of the concrete expansion where Ms. Buchanan fell supports my opinion that the parking lot of the Jena Wal-Mart was defectively designed, constructed and maintained and it is in violation of applicable building codes as set forth in my report.

(Doc. 47-3, p.1) However, no other statements in the affidavit explain how Mr. Herrington's statement supports Mr. Ehlinger's conclusion that the parking lot was defectively designed,

4

constructed and maintained nor is it apparent from a review of the attached expert report. It is simply stated in a conclusory fashion with reference to various guidelines and another conclusory statement that "expansion and contraction joints are improperly located and spaced." (Doc. 47-3, 9.4). There is nothing within the report to show that these codes and/or guidelines exist for a purpose beyond the initial construction of the parking lot. There is nothing in the report to indicate that the parking lot did not comply with these codes and regulations at the time the parking lot was constructed in 2007. In fact, Mr. Ehlinger's own statement is that the vertical edge was created over a period of years.

We also find Mr. Ehlinger's report to contains statements that are unsupported by the record evidence. He writes there is a "pothole of spalled concrete at [an expansion] joint" that is "approximately 3-5" wide by approximately 12" long and by 1"-2: deep" and "it contained loose sand and pebbles below the depth measured." (Doc. 47-3, 4). Mr. Ehlinger's finding are based on his visit to Wal-Mart (after it took remedial measures to correct the uneven surface), plus photos taken by Buchanan and photographs submitted by Wal-Mart. (Id. at p.3). However, none of the exhibits to his report containing the evidence he relied upon are included in the plaintiff's filing. The only physical evidence before us are the surveillance video and Mr. Herrington's photographs. Accordingly, we do not find the expert's report or his affidavit create a genuine dispute of material fact.

Even if the case law and expert opinions did create a genuine dispute of material fact, a risk-utility analysis of the parking lot conditions further weighs against a finding that the uneven surface posed an unreasonable risk of harm. Under the analysis, "the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others." Reed v. Wal-Mart, 708 So.2d 362, 365 (La.1998). Accordingly, in such cases, as here,

the court considers four factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. Pitre v. Louisiana Tech University, 673 So.2d 585, 591-93 (La. 1996).

The utility of the parking lot is not at issue. It is agreed that a paved parking lot is preferable and presents fewer potential defects than an unpaved parking lot.

The parties dispute whether the condition was obvious and apparent but based upon the surveillance video and photographs, and general life experience, we find that it was. As stated in Reed,

> It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints and curbs. These surfaces are not required to be smooth and lacking of deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm.

Id. at 363. We also find it disingenuous for Buchanan to argue the defect wasn't open and obvious when she was not paying attention to the path she travelled at the time of her fall. A difference in elevation of 1 inch is certainly large enough to see and, according to defense witnesses, there is no known accident history at this location. Buchanan provides no evidence to the contrary.

Although Wal-Mart did not provide numbers as to how many people traversed the area at issue, Buchanan argued it was traversed at least once a day by Wal-Mart personnel during the summer and the surveillance video showed several people traversing the area around the time of her fall.

As to utility of the parking lot and the cost of maintaining the area, we rely again on <u>Reed</u> and the court's conclusion based upon prior case law and life experience that maintaining a parking lot in such a way that would eliminate defects would be cost prohibitive. <u>Reed</u> at 366.

Conclusion

In light of the foregoing, we find Buchanan cannot establish a genuine dispute of material fact regarding whether the uneven pavement constituted an unreasonable risk of harm, an essential element of her claim and one as to which she will bear the burden of proof at trial. Accordingly, the motion before the court will be GRANTED in full, dismissing all claims with prejudice. A judgment in conformity with this finding will issue.

**SIGNED** this 18ᵗʰ day of December 2019, at Alexandria, Louisiana.

JUDGE DEE D. DRELL<br>
UNITED STATES DISTRICT COURT